## THE MARY EVELINE.

1. Though a sailing vessel having the wind is *primâ facie* bound to adopt such a course as will prevent collision with other sailing vessels not having it, it is still the duty of these last in an emergency to make their courses so as not to render it difficult for the vessel having the wind to do her duty by rendering it doubtful what movement she should make.

2. This principle applied to a case where a vessel having the wind, in order to avoid a very strong tide (that in Hell Gate), was sailing so close to a shore wall that she could not safely have lessened the distance, and where the position of the other vessels in regard to a third vessel made it dangerous for the vessel having the wind to luff.

3. Under these circumstances the vessel having the wind *held* justified in having kept her course.

APPEAL from the Circuit Court for the Southern District of New York.

On the afternoon of September 20th, 1868, the sloop Ethan Allen and the schooner Mary Eveline came in collision while navigating the East River, near Blackwell's Island. The sloop was sunk and her cargo was lost. Her owners filed their libel against the schooner and her owners, claiming as damages the value of the sloop and her cargo. The libel was dismissed in the District Court, and the decree was affirmed in the Circuit Court. The libellants appealed to this court.

*Mr. R. H. Huntley, for the appellants; Mr. F. A. Wilcox, contra.*

Mr. Justice HUNT stated the case and delivered the opinion of the court.

The Ethan Allen was going eastward through Hell Gate, on her passage to some port in Connecticut. The wind was fresh and blowing from the southwest. She was running against a strong ebb-tide, and for the purpose of avoiding the strength of the tide was running close under the eastern shore of Blackwell's Island. Her hull was within about seventy-five feet of the wall of the island, and her sails on her port side came within twenty or thirty feet of the island.

The Eveline was sailing in the opposite direction, towards New York, and was close in company with the schooner Hawley, the latter being ahead. The two schooners were beating up against the wind. On the last tack before the collision the Eveline was so close to the Hawley that when the latter tacked the former was obliged to keep off so as to go under the Hawley's stern. By the time the Eveline got well under way on the last tack the Hawley had crossed the river, and made her next tack near the Blackwell shore, and passed but a little way in front of the Allen. The Eveline passed on under the Hawley's stern, keeping off the wind for that purpose. As she luffed to go about she ran directly into the Allen, striking her on the starboard bow. The answer admits that the Eveline took a direction to the leeward and astern of the Hawley, and that she just cleared her stern. It alleges, also, that the collision occurred through the sud-. den and confused orders of the Allen, and especially in this: that she first kept off and then luffed, whereby it became impossible for the Eveline to avoid the collision. The *primâ facie* duty of avoiding the collision no doubt rested upon the vessel having the advantage of the wind. She was bound to adopt such course as would protect all the vessels, assuming that the other vessels would do their duty also. It was, however, the duty of the other vessels so to make their courses as not to render it embarrassing or difficult for the sloop to do her duty, or to make it doubtful what she should do in the emergency. The schooners were bound to take reasonable precautions on their part. The sloop, although having the wind, was not a guarantor against collision.

The channel was some 650 to 750 feet in width. The schooners were each 160 feet in length, occupying one half of the width of the channel. The Allen was close to Blackwell's Island. Her position there was not only the best for herself, but in thereby giving to the schooners nearly the whole of the channel, was the best position on their account. She kept steadily on her course as near to the island as she could safely pass. The vessels had been in sight for some time and each well understood the position of the other.

The answer alleges that the Allen should have avoided the difficulty by luffing or keeping off. It does not, however, specify which she should have done. Her hull was within seventy-five feet of the island wall, and her sails within twenty or thirty feet of the wall. This was, of itself, a hazardous proximity. It would have been very unsafe to have lessened this distance. · The evidence is that she was running as close to the shore as it was safe for her to do. · She could not, therefore, have kept off. If she had luffed, she would have brought herself out into the narrow channel, where· the Hawley and the Eveline were both beating across in front of her, and the danger of a collision would have been much greater than by adopting the course she did.

, We are of the opinion that, under·the circumstances, the Allen did right in keeping her course, and that the fault was with the Eveline rather than with the Allen. If the Eveline had tacked when the Hawley did, she would have avoided the collision. ' This would have brought her out of the way, leaving the passage next to the island clear for the Allen. Again, she should not have changed her course by keeping away on the last tack, thus rendering necessary a larger sweep 'to go about and bringing her nearer· to the Allen, when her course could not be changed. If she was at this point in a position of embarrassment it was her own fault. She saw it in advance, should have known it, and avoided it, by keeping further to the leeward of the Hawley, or by making her tack at an earlier period. She cannot shift upon another the consequence of an embarrassment produced by her own fault.

The captain of the Eveline did not expect the Allen to luff into the channel. He·testifies that he supposed she would go to the Blackwell Island· side, and that there was plenty of room for her there. He acted upon· this theory, in which we think he was greatly in error, and the collision was the result.

.On the most of the points of the case there is, as is usual .in collision cases, a great conflict of evidence. Upon a care-

ful review of the testimony, we think the error was with the schooner Eveline, and that the libel should not have been dismissed.

DECREE REVERSED and record remitted with instructions to enter judgment for libellants, and for further proceedings·

IN ACCORDANCE WITH THIS OPINION.